This is an appeal from a jury verdict in a patent infringement case tried in Cedar Rapids Iowa involving two patents. The jury found infringement of both patents and willful infringement of one of the patents and terrible damages may be rewarded. You may assume that we've digested where we are. And the issue, and the first patent, I mean the 578 patent, your honor, that deals with the equivalency issue where the jury found infringement by equivalency, one of the claim limitations in that patent is a plate. And it is a plate that fits over a diaphragm in the turkey paw. The plate itself is described in the specification as only three different words, a plate, a flange, or a shelf, and the figure number is 24. The claim is originally filed in the patent trademark office used the word simply a plate extending generally upward and over the membrane. A reference called Cooper was cited by the examiner against the applicant. The Cooper reference showed a frame, a diaphragm from which the sound is made by vibration, and it showed a tab extending out over that diaphragm in parallel relationship. In response, the applicant amended the claim language of plate. Mr. Cease, to help us focus, it would help if you would point out exactly the areas in which you feel that the jury could not have reached the verdict that it reached. Yes. Your honor, it is our view that the jury could not have reached the view that a dome over the diaphragm was the equivalent of a plate. Because while the trial court correctly found, we believe, the definition in a Markman type hearing on a preliminary judgment of plate, they said the structural element of uniform thickness and flatness which may have some curvature to it. That cannot be a dome. It cannot meet the dome definition for two reasons. You mean the dome can't meet the plate definition? Yes. A dome, to say that a dome is a plate would vitiate. There was no literal infringement here. The question is whether or not the dome is an equivalent. Yes. And it is our view that equivalency never should have gotten to the jury, and that the jury should not have been allowed to decide whether the dome was the equivalent because, number one, it vitiates the claim element plate. How does it vitiate it? If the issue was whether the dome was equivalent to a plate, you're not losing the claim limitation. You're just finding or not finding an equivalent. Doesn't vitiation mean elimination of a claim limitation? My understanding, Your Honor, is that vitiation means that, in effect, you have, by the equivalent that you are urging, you have written a limitation out of the claim. But you're substituting the dome for the plate. It's not vitiated. It's just arguably equivalent or not. It is vitiation, I believe, Your Honor, under the test of the Ethicon case, which says that if the thing that you assert to be equivalent is somehow inconsistent with the language used in the claim, then that constitutes vitiation. Vitiation and non-equivalence are the same, in your view? No, I don't think they are the same. I think they are different. But if there's an equivalent, let's conduct the argument at least on the basis that if there is an equivalent of the plate, that the all elements rule is not violated. If there were neither plate nor equivalent, I think none of us would have any trouble with saying that element is eliminated or vitiated. So I think it would be helpful to tell us why no reasonable jury could have found a dome to be equivalent, as a matter of fact, to a plate. It is our view, Your Honor, that it is not a factual inquiry that is before us. The inquiry before us is a question of law based upon whether or not prosecution history estoppel applies to the amended claim element such that no reasonable jury could have found as they did. What's the amendment? Adding length? Adding length and differential spacing. The word plate just appeared in the claim by itself. But that's not really relevant to the distinction between the plate and the dome, because the dome has length too. Well, there was a lot of argument about whether or not a dome has length in the ordinary connotation of the term length. The argument of the appellee was length does not commode any dimension, it just connotes that a physical object has some measurement. How about the other pattern? Your view is that engaging means interlocking. Yes. How can you have interlocking in the roof of the mouth? What does it interlock on? Your Honor, it may not be that interlock is the correct term, but what is the correct term is that engage means more than simply contact. And it is at best somewhat difficult to determine what engage means from the language of the specification because you will not find the word in the specification. It is not used in the specification anywhere. It first appeared in the claims. And in the claim, it is used to describe two different elements of structure. One is the relationship between the skirt and the top of the mouth in order to form a ceiling relationship. And the other one is to describe this plate and its relationship to the roof of the mouth. And if you look at the specification, the best that you can find in there is in the context of what the words are as used, it is important to have two fixed points. One, the point where the skirt defines the area. And secondly, where the prong or the tab sticks into the soft tissue of the roof of the mouth in order to fix an area of the mouth which becomes the sound chamber. That is different in the accused infringing structure where the sound chamber is defined not at all by the roof of the mouth, but by the dome itself. So that it is constant and never changes. And it does not matter whether it moves around in the mouth. In this instance, engage must mean something more than contact. Perhaps it doesn't mean interlock. And indeed, the district court said, Your Honor, well, I have a tough time figuring out how interlock works with something that goes in the mouth. It works with years, but maybe it doesn't work in the mouth. Maybe the word is said should well have been something like a fitting relationship or a fixed position relationship instead of interlock. And I think, you know, the Phelps decision helps us say that it is important to look at how is the context of the words used rather than any magic of any particular definition. Well, what definition did you advocate before the district court? We advocated a definition before the district court of an interlocking relationship. So now you're up here advocating something other than what you're advocating. Not necessarily. What I'm up here advocating is that I believe interlocking is wholly appropriate for it. I believe also that a fit and secure relationship is wholly appropriate for it. But it is something more than contact. And how do we know that mere contact, the only hint that we have of that, is in the language of Claim 20 that appears in the patent where the word contact is actually used. And in Claim 20 of the patent, they describe contact as the relationship between the diaphragm and the frame member around the edges. So we know the patentee knew how to use contact when we wanted to talk about a mere touching relationship. So where is the confusion or ambiguity as to how the device works or fits inside the mouth? Well, I'm not sure I understand your question. Well, you're telling us that there are problems with the terms that were used. I'm having trouble imagining how it can interlock within the mouth. But it occurs to me that if anyone reading the patent would know how it works, where it fits, how to install it, that perhaps it's hard to say that no jury could have understood how the structure is accommodated. Well, what I am saying is that in the context of the patent, that, as this court well knows, we have to balance the definition of the invention versus reasonable public notice. And what that gives public notice to is that this thing must fit in your mouth and have two secure positions, one around the flange or the skirt and the other one in the roof of the mouth to give a fixed position so that one can blow it and get a constant and uniform sound. And that's what happens with the patent of the device. That's what the specification talks about. A dome doesn't do that. The dome has a rounded exterior surface that can touch the roof of the mouth, but it has the capability of moving around in there. Just common sense tells one that. And that is unimportant in that context. Why? Because the chamber from where the sound emanates is the fixed chamber defined by the area underneath that dome. And that never changes. And that is different from the accused infringing device. And that's why the reasonable fair notice that it gives is something more than simply contact. Now, the district court found that originally in a preliminary injunction hearing that it meant contact. It said it in the context of dicta, I submit, where neither party was disputing what that meant at that time. Later on, there was a Markman brief and motion filed to ask for construction of gauge and gauge. A different judge at that time said, Judge Reed, no, I am not going to do it at this time. I am going to leave it at trial. And then it was finally construed at trial by Judge Jarman, where he said it simply means contact, in my opinion. We believe that is error and that error that this court can review de novo for the true determination of what contact means. And the third point, Your Honors, that I wish to raise before this court is the very serious issue of an evidentiary issue on the so-called aluminum fractal, which I recognize that before this court our standard is a high one. It is an abuse of discretion. We must show that the trial court abused its discretion in not allowing the aluminum fractal evidence. The... Well, did you, with regard to that issue, did you put on evidence, I mean, did you explain to the trial court why you failed to locate it earlier or how you showed or tried to show due diligence for not locating it later? We told the trial court that we had been in search of a sample of the aluminum fractal from the time that there was testimony and depositions that one had existed. And we had not been able to find one. Wayne Carlton, who in fact... Well, if we're... How are we... I mean, as you acknowledge fairly, the level of our review is quite limited. So if the judge made a determination as to whether or not you all exercised reasonable diligence, et cetera, on what basis are we to overturn the judge? Because, Your Honor, in our view, the judge abused his discretion. When that call was found in January, it was immediately provided to the plaintiffs. We were told that we had been able to locate one. Pictures were provided. The specimen was actually sent to them for examination. All this occurred in January 2004. We didn't have a trial until March 2004. And so there was ample time to do whatever needed to be done to investigate that call and to take any discovery that was needed with respect to that call and then allow the parties at trial to present evidence on both sides. Instead, what we had is the court saying, no, I am giving, quote, one quail of a limiting instruction, and that instruction will say you cannot consider it as prior art. That's an abuse of discretion given the timing of when it was discovered and given what was done by the defendant at the time that it was discovered. There was plenty of time for discovery. There was plenty of time. It also, I might add, Your Honor, ignores the public interest and did not give the public interest its due care. Which simply says that if you have prior art, that is good prior art, that ought to be considered in determining the validity of the patent. In fairness, that should happen. There is a public policy that these issues be litigated. On what basis was it prior art? There were a couple of handmade samples. They were lost. Nobody could find them. Nobody knew exactly what they looked like. They weren't published. They weren't in public use. They weren't on sale. Wouldn't we have to first conclude that this would be a material change, important evidence, in order to consider whether the trial judge abused his discretion in declining to admit it? You would, Your Honor, but I think there is sufficient evidence in the record that shows that this was demonstrated at a Rocky Mountain trade show in 1991, and one was provided to a witness named Dieter Kvoth without restrictions at that show, used at that show, and the man used it ever since. And that evidence was before the trial. Was that in Canada? The show occurred in Denver, Colorado. The witness lived in Canada. My name is Lyle Doerr. I see my time is up. Yes, you are into your rebuttal time. Did you want to answer something on this point further? I heard the answer. You have the answer. All right. Thank you. We'll hear from the other side. Mr. Foster? May it please the Court, Counsel, it's a pleasure to be here. I do have, I sent in some demonstratives so you can actually see what these things look like as I go through some of my arguments. I must say that's a very good technique. Send them in in advance. Thank you. With the Court's permission, I will demonstrate briefly how it works to make an elk call. Is that what an elk sounds like? That's an elk. That's a cow elk sound. The turkeys now are gobbling. I don't think that tells us much about engagement versus interlocking. Okay. All right. We'll start with engagement. A couple of points. Number one, this call is the only call, the tone trough that violated both of the patents. The Damages Award and the Enhanced Damages Award run, if you affirm on engages and engaging, you don't need to hit the issue of plate because both patents are infringed. So that's something not in the brief the Court should be aware of. They did not also, the jury form you will see, the jury considered both literal infringement and infringement of the Claim 21 of the 567 patent under the Doctrine of Equivalence, finding both literal infringement and the Doctrine of Equivalence. They have not appealed the jury's finding of infringement under the Doctrine of Equivalence on the second group of the engagement portion. But we do have a DOE finding by the jury on plate. That is correct. And a DOE finding on second group of not engaging in addition to literal infringement. Obviously, if the Court upholds the finding and construction of the Court on engaging, the DOE result is unnecessary to deal with. The DOE result with respect to engaging, but are you saying the DOE result with respect to plate? I was talking about engaging. Okay. So you have to, we still have to reach both issues on engaging and on plate. I don't think you do on plate if you determine that engaging is properly, was properly construed because it's the same patent covering the device, two patents covering the same device. So you can't avoid the issue of plate by ruling and affirming engaging  I thought they were different. I thought we were dealing with claim two of the 578 patent for the plate, the DOE issue on plate, and claim 21 on the 5567 for the engaging. That's correct. Which is literal infringement. Literal infringement on engaging. That's what they raised. What they didn't appeal is the jury's finding of infringement under the Doctrine of Equivalence. For which patent? For claim 21 as well. For claim 21. But I'm not understanding why if we were to affirm on engaging of literal on 21, why that disposes of the issue of plate in claim two of 578. Well, simply because the judgment, the money judgment, is supported by the infringement of either patent. We asserted both patents against the same product. Oh, I see. But what are you telling me is not appealed? Equivalence of claim 21? If that's not appealed, then the 567 patent is out of the case. You've won. I think that's correct. It's a point not raised. How many times do you have to infringe a patent to be liable? Only once. Right. But you're telling us if they win, if they haven't appealed the DOE, then if that stands, then you've won on claim 21, but you're also telling us once you win on claim 21, you've also won on the other issue. Unnecessary to reach, claim two. So the question is why we're here. It doesn't make sense. I thought that the adverse judgments were appealed. The adverse judgments were appealed, but only in claim construction of the engaging of literal infringement relating to engaging. So it's certainly not raised in the brief. That's why I'm raising it here for the court's consideration. Mr. Cease raised a point that I want the court to focus on in regard to construction of engaging. Judge Malloy, who's now sitting on the Eighth Circuit, construed it. He indicated that they didn't construe it. In fact, that's not the case. We've cited to the court's summary judgment and claim construction order, and in two locations he construed the term engages. To mean contact. To mean coming to contact with. And how is that different from claim 20, which uses the actual term contact and not engaging? Contact regarding the contact is contact with the frame. It's a different kind of contact relating to the membrane of the frame. With respect to the way these calls are used, the specification makes clear that the tongue urges the call up into the roof of the mouth, and that this plate comes into contact with the roof of the mouth  to make the call easier to use. When you look at claim at figure 3, it doesn't show any gouging or sharp corners digging into the flesh in the roof of the mouth. One thing that's important in regard to the intrinsic evidence that I don't think has been clarified, as it should have been, there has to be engaging of this tape edge, I'll use the infringing product, as well as the dome. Now, this modifiers for this first roof of mouth engaging portion include yieldable sealing portions. So the engagement here is contacting, just like it is here, two points of reference. It doesn't need to dig in to the roof of the mouth. It simply has to contact. There's no sharp corners on that tape. There's nothing to gouge or press into the tissue. And as the question pointed out, people skilled in the art would understand this. Evidence of record is that Mr. Carlton received our patent, looked at it, and said it doesn't touch. That was their defense. It doesn't touch. Their defense was never until late in the game, after it had been construed by three judges, that it needed to interlock. So they changed their position. Can I move you to the DOE issue, please? Yes. And the plate. A plate is not a dome, correct? That is what the jury determined. The court construed the term plate. The jury had that construction. The court determined the plate was literally not a dome. And then the jury went to the issue of the Doctrine of Equivalence, and the jury found that the functions performed, as recited in the patent, in fact, their advertising almost took straight from the statute. But before we get to the function way, we've got to look at whether or not a limitation has been vitiated. Yes. So could you tell us why the limitation of a plate, since a dome is not a plate, has not been vitiated under DOE? Yes. Number one, there are many claim elements in claim two. If you look carefully at the jury instruction, there was only one disputed element. All the other elements were undisputedly in the infringing call. The only element left was a plate. That's all the jury had to say. And that's a limitation. That is a limitation. Okay. They didn't find it literally. They were asked to find it under the Doctrine of Equivalence, and they went through the function way result analysis, and they found it. What they're really saying is we're not vitiating an element. We're vitiating the court's claim construction of that element, which would result in essentially duplicating literal infringement during the DOE phase and swallowing the DOE in the court's claim construction. We are unaware of any cases from this court that support that position. What's the difference between this case and the Tronso case? Are you familiar with the Tronso case? I think it was cited in a brief. The Tronso case is an excellent case. In that case, the claim related to a kept replacement item, and the claim language itself required that one of the structural elements be conical, and the court said if it's not conical, you can't substitute another shape for conical. Well, here's the problem I'm having. The court's claim construction defined a plate as having it may have some curvature, some moderate curvature. Yes. So why isn't that a specific structural limitation that would be vitiated under DOE? Because if you look at the patent, and you look at the functions that are performed by that patent, you would see that the functions would be, among others, does it stop the latex from going too far and overstretching it? That's a function. How is that performed? By having any structure. You can have it flat, you can have it domed, you can have it V-shaped in there to give it the right positioning in the mouth so it doesn't go too far back. Is it important to have a half dome or something flat and curved? No. When you talk about the constant space between the roof of the mouth and the latex, does it matter whether it's rectangular, any shape at all? What happened is they want to say that when you have the game that the little kids play, a round circle, a square, a rectangle, a star, a plate would be one of those things you push through the hole. There is no specific form that a shape comes in. It simply was a word used and recognized. One of the reasons I brought this prior call up is because this is the way it was. No structure above the latex. The patented call was the first to bring something over and extending above the latex with differential spacing. Even the Cooper product was never commercialized. This is it. So when you're looking at something that's, normally you've got to have this at different angles and it can slide too far back. That's what it will do no matter what the structure is. If it performs those functions, it infringes on the doctrinal quill. Are you saying that, would you say that if a property doesn't appear in the accused and the property is a limitation, then that's vitiated. But if a structure isn't duplicated, literally, but forms the same functional result, then that's not vitiated. It's just substituted by an equivalent. In other words, distinguishing between a structure and a property. I can answer the question, say, in regard to a structure. I think Judge Gross was talking about, if I caught it correctly in Tronzo, a property. And the property, if that's vitiated, well, it's not there, it's vitiated. Whereas a structure isn't vitiated if there's another structure in its place. It just may or may not be an equivalent. That's precisely our position. If there is a structure, the court defined it as a structure and then described what the structure had to look like to constitute literal infringement. But the absence of the structure literally means, is it going to be there under the document of equivalence by the function wave result analysis. In the property, in Tronzo, if it's a property such as a conical, a modifier of the structure, a certain type of hip replacement has got to be conical. You can't make it square, rectangular, because you claim conical. We didn't claim flat. We didn't claim relatively thin. We didn't claim moderately curved. We claimed a plate. And it was the first time anything had been put on top of a diagram call. It was a new word, and it was a word that was used similar to other plates in external game calls. And one issue, since we are focusing on the issue of plate, we believe that the court was very generous in its construction of plate for the defendants and that, in fact, the claim construction essentially described the preferred embodiment. Even though the court said it wasn't doing it, we believe that's what the court did. When you look at the prior game calls, we put them in the past. This is an external game call, one of the Primo's game calls. It hooks onto a bugle here and creates a bull sound. And this is a latex, and they cover them in different ways. The part right here is what they call in the prior arc backing plates. And, in fact, the Maligne patent cited on the face of the patent is intrinsic evidence to support that construction. There's extrinsic evidence that supports that. There are so many patents, we've given you the pictures of the patents to highlight that point. One other thing that's important, the differential spacing. To the extent they're trying to say that this call doesn't have differential spacing, and I kind of saw that in their reply brief, that issue is waived. As you'll note from the court's jury instructions and the court's post-trial JMA ruling, the differential spacing issue was conceded. It was not presented to the jury. The only thing that was presented was the question of plate in regard to the claim to literal or under the document of equivalence. Before you sit down, just to go back to your first point in case there is some dispute when we ask the other side about this, since you didn't raise it in your briefs, where in the appendix do we find the fact that DOE, the jury found DOE on the engaging? If you look at the supplemental verdict form, actually the verdict form, it's 4141-1. You will see for both patents, the 578 and 567 patents, there's a column, literal infringement, they check no on the 578 patent, yes, under the document of equivalence. For the 567 patent, yes, literal infringement, yes, under the document of equivalence. Okay. My time is running very short. One thing I wanted to mention before I get to the evidentiary issue very quickly, on the adverse inference issue, they didn't touch that, but a couple of things the court should be aware of, not clear in the brief. It was a bifurcated trial. The issue of adverse inference was raised on the inducing inferential instruction. After the bifurcated trial, and we prevail in the willfulness phase, if you look at the supplemental verdict form and the supplemental instruction number 9, that instruction didn't have anything relating to the advice of counsel. So to suggest that there was confusion, there was no argument, HS, the corporate defendant, was the only defendant on willfulness, not the individuals. So to suggest that somehow that affected the willfulness, that procedural posture wasn't clear in the briefs, and I want to make sure the court understood it was a bifurcated trial, a separate evidence that was heard on the willfulness issue. I think we've exhausted your time. Can you wrap it up in another 30 seconds or so? I don't have any more to say unless the court has questions.  Okay. Thank you, Mr. Foster. Mr. Cease. Your Honors, just a couple of points. First, it is our view that if the court should agree with our view on the 578 patent and plate versus dome, there is a need to reverse and remand for a new trial, at least with respect to the damages. Because the argument of Appley is, well, two patents covering the same device. And, yes, there were two patents that were asserted against the same device, but we will never know, because it's essentially a black box verdict, how much of the damages were awarded by the jury for the finding of equivalency under the 578 patent or how much of the damages were awarded for the 567, the engaging patent. And I can tell you that juries have trial on jury cases, and juries, you cannot ignore the fact that they view potentially two patents as being infringed as a different matter than potentially one. And so at the very minimum, if that should happen, we need to go back and retry the damages case. If you agree with them on engage and you agree with us on plate versus dome. With respect to the wording of engage, we appeal from all adverse judgments that were made against this, and we appeal from the judgment of infringement, and I think that appeal is broad enough to include an appeal on the issue of whether or not there was literal infringement, which we don't think there ever was, and an appeal on whether or not there was infringement by DOE. We don't think we ever have to get DOE, because we don't think there was any infringement. There was no literal infringement under a correct interpretation under Markman of the meaning of engage, which is more than we're touching. We ask for a reversal on both. Thank you. Okay. Thank you, Mr. Cease. Mr. Foster, the case is taken under submission.